IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SEAN MAURICE OLIVER,

    Petitioner,

    v.                  CASE NO. 18-3055-JWL

COMMANDANT,
USDB-Leavenworth,

    Respondent.

## MEMORANDUM AND ORDER

This matter is a pro se petition for habeas corpus filed under 28 U.S.C. § 2241. Petitioner is confined at the United States Disciplinary Barracks in Fort Leavenworth, Kansas. Petitioner challenges his 2015 conviction by general court-martial.

## I. FACTUAL BACKGROUND

Petitioner, a former active duty member of the United States Air Force, was tried by a general court-martial beginning in August 2014, and with numerous breaks in the proceedings, concluding on May 8, 2015. *See United States v. Oliver*, No. ACM 38858, 2017 WL 437402 (A.F. Ct. Crim. App. January 27, 2017) (unpublished decision). Petitioner was convicted of making false official statements, murder with intent to kill, assault consummated by a battery, and obstruction of justice in violation of Articles 107, 118, 128, and 134 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 907, 918, 928, and 934. *Id*. at *1. Petitioner was found not guilty of the greater offenses of premeditated murder and aggravated assault. *Id*. The adjudged and approved sentence was a dishonorable discharge, confinement for life with the possibility of parole, and reduction to the grade of E-1. *Id*.

Petitioner was represented at his court-martial by his detailed military attorney. In military cases, the post-trial process begins with defense's submission of matters to the convening authority. *See* Rules for Court-Martial ("R.C.M.") 1105. After his court-martial, Petitioner's case was forwarded to the CCA for mandatory review under Article 66, UCMJ, 10 U.S.C. §§ 866(b). Petitioner was represented by appointed appellate counsel during his appellate proceedings.

Petitioner appealed to the Air Force Court of Criminal Appeals ("AFCCA"), raising eight assignments of error as follows:

> I. Whether the military judge erred when he declined to provide the members with standard benchbook[1] instructions informing them that [SPC CK] had been promised leniency in exchange for his testimony.
>
> II. Whether Petitioner's confession to investigators from the Air Force Office of Special Investigations was voluntary where, among other things, Petitioner was told, "There's no way you can incriminate yourself in this" and "after you tell us the truth, okay, we're going to call your first shirt and you are going home" and that if he confessed, his commanding officer would go into "mommy mode" and protect him.
>
> III. Whether, during custodial interrogation, Petitioner's statement to the Air Force Office of Special Investigations "I need to like stop and ask for a lawyer" should be suppressed under *Edwards v. Arizona*, 451 U.S. 477 (1981).
>
> IV. Whether agents of the Air Force Office of Special Investigations violated Petitioner's Sixth Amendment right to counsel and M.R.E. 305(e)(2) when they interrogated him outside the presence of counsel before the German government terminated its criminal case against him.
>
> V. Whether the prosecutor committed prosecutorial misconduct during his sentencing argument when, among other things, he vouched for a witness by asserting his heart would have skipped a beat if a key witness had lied during his testimony, by

---

[1] The Bench Book is a U.S. Army publication discussing court-martial procedure and standard instructions on findings and sentencing.

2

calling Petitioner a liar, by calling a witness he called to testify pursuant to a grant of immunity a "lying liar who lies," and by calling an aspect of the defense case "beyond silly."

VI. Whether the trial transcript's absence of seven minutes of discussion between the parties and the military judge on the instructions to be given to the members is a substantial omission requiring a new trial.

VII. Whether the military judge erred when he declined to instruct the members as to accident as requested by the defense.

VIII. Whether specification 1 and 2 of Charge I alleging Petitioner made two false official statements during his interrogation on 20 December 2013 are multiplicious.

(*See* Doc. 7–5, at 3–4.)

On January 27, 2017, the AFCCA, finding no error prejudicial to the substantial rights of Petitioner, affirmed Petitioner's convictions and sentence. *United States v. Oliver*, 2017 WL 437402, at *19. On February 27, 2017, Petitioner asked the AFCCA to reconsider its decision *en banc*. The AFCCA denied the request for reconsideration *en banc* on March 27, 2017, with the order providing that in accordance with Rule 17(b) of the Joint Courts of Criminal Appeals Rules of Practice and Procedure, the suggestion for reconsideration was provided to the Court as a whole, and "[n]o judge of the Court who was present for duty requested that the Court as a whole vote to determine whether the Court would grant en banc reconsideration." (Doc. 7–8, at 2.)

Petitioner appealed to the Court of Appeals for the Armed Forces ("CAAF") on May 12, 2017. (Doc. 7–9.) The appeal to the CAAF raised five issues:

I. Whether the military judge erred when he declined to provide the members with standard benchbook instructions informing them [SPC CK] had received leniency in exchange for his testimony.

II. Whether Petitioner's statement to investigators from the Air Force Office of Special Investigations was involuntary where, among other things, Petitioner was told, "There's no way you can incriminate yourself in this" and "after you tell us the truth, okay,

we're going to call your first shirt and you are going home" and that if he confessed, his commanding officer would go into "mommy mode" and protect him.

III. Whether the lower court erred when it concluded that the military judge's failure to give the requested instruction of accident was harmless beyond a reasonable doubt when the lower court held that the defense of accident was both requested by the defense and raised by the evidence, and the military judge gave the standard self-defense instruction.

IV. Whether, the military judge erred in finding Petitioner's request for counsel ambiguous when he denied the defense motion to suppress Petitioner's statement "I need to like stop and ask for a lawyer" to agents of the Air Force Office of Special Investigations during a custodial interrogation when the agent responded "you will be perfectly fine."

V. Whether the trial transcript's absence of seven minutes of discussion between the parties and the military judge on the instructions to be given to the members is a substantial omission requiring a new trial.

(*See* Doc. 7–9, at 3–4.)

On May 19, 2017, the United States entered a general opposition to the Appellant's assignments of error in Appellant's Supplement to Petition for Grant of Review to the CAAF, and waived its right to file a brief in response, instead relying on its brief previously filed with the AFCCA. (Doc. 7–10, at 2.) On August 14, 2017, the CAAF issued an order denying Petitioner's petition for review of the AFCCA's decision. *United States v. Oliver*, USCA Dkt. No. 17-0382/AF (C.A.A.F. 2017); Doc. 7–11, at 2. The Order Denying Petition states that "[o]n consideration of the petition for grant of review of the decision of the United States Air Force Court of Criminal Appeals, it is by the Court, this 14th day of August, 2017, Ordered: That the petition is hereby denied." *Id*.

Petitioner filed the instant Petition asserting the following grounds: 1) jury members were not provided with a standard bench book instruction regarding immunized testimony;

4

2) Petitioner's confession and statements to investigators were not voluntary; 3) the standard self-defense instruction was given instead of an instruction tailored to the evidence for the defense of accident; and 4) the failure to allow Petitioner's request for counsel during interrogation. (Doc. 1, at 6–7.) In his Petition, Petitioner acknowledges that he raised all four of these grounds in all appeals that were available to him. *Id*. Petitioner prays that the Court "[g]rant a retrial with illegally obtained confession omitted and required instructions and information given to the panel." *Id*. at 7.

## II. ANALYSIS

A federal court may grant habeas corpus relief where a prisoner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). However, the Court's review of court-martial proceedings is very limited. *Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 670 (10th Cir. 2010). The Supreme Court has explained that "[m]ilitary law, like state law, is a jurisprudence which exists separate from the law which governs in our federal judicial establishment," and "Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." *Nixon v. Ledwith*, 635 F. App'x 560, 563 (10th Cir. Jan. 6, 2016) (unpublished) (quoting *Burns v. Wilson*, 346 U.S. 137, 140 (1953)). "[W]hen a military decision has dealt fully and fairly with an allegation raised in [a habeas] application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Thomas*, 625 F.2d at 670 (quoting *Burns*, 346 U.S. at 142). Instead, it is the limited function of the civil courts "to determine whether the military have given fair consideration to each of the petitioner's claims." *Id*. (citing *Burns*, 346 U.S. at 145).

Any claims that were not presented to the military courts are deemed waived. *Id.* (citing *Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003)). Because all of Petitioner's claims were presented to the military courts, this Court must determine whether those courts "fully and fairly reviewed" each claim. *Id.* If a claim was presented but not given full and fair consideration, then "the scope of review by the federal civil court expand[s]." *Id.* (citing *Lips v. Commandant*, 997 F.2d 808, 811 (10th Cir. 1993)).

The Tenth Circuit has set forth the following four-part test to aid in determining whether the claims were fully and fairly considered:

> To assess the fairness of the consideration, our review of a military conviction is appropriate only if the following four conditions are met: (1) the asserted error is of substantial constitutional dimension, (2) the issue is one of law rather than disputed fact, (3) no military considerations warrant a different treatment of constitutional claims, and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards.

*Squire v. Ledwith*, 674 F. App'x 823, 826 (10th Cir. 2017) (unpublished) (quoting Thomas, 625 F.3d at 670–71 (citing *Dodson v. Zelez*, 917 F.2d 1250, 1252–53 (10th Cir. 1990)). The test "develops our understanding of full and fair consideration" to determine "whether the federal court may reach the merits of the case." *Squire*, 674 F. App'x at 827 (citing *Roberts*, 321 F.3d at 997). "While we continue to apply this four-part test, [we] have emphasized the fourth consideration as the most important." *Squire,* 674 F. App'x at 826 (quoting *Thomas*, 625 F.3d at 671). "An issue has been given full and fair consideration when it has been briefed and argued at the military court, even if that court summarily disposed of the issue." *Williams v. Ledwith*, 671 F. App'x 719, 721 (10th Cir. 2016) (unpublished) (citing *Roberts*, 321 F.3d at 997; *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986)); *see also Squire*, 674 F. App'x at 826 ("Even a military court's summary disposition of a claim can show adequate consideration of the issues

involved."); *Burke v. Nelson*, 684 F. App'x 676, 680 (10th Cir. 2017) (unpublished) (citing *Watson*, 782 F.2d at 145) ("[W]hen it comes to court-martial rulings on constitutional claims, our review is sharply limited: so long as the claim was briefed and argued before a military court, we must deny the claim."). The petitioner has the burden to show that a military review was "legally inadequate" to resolve his claims. *Williams*, 671 F. App'x at 721 (citing *Watson*, 782 F2d at 144 (quotation omitted)).

**1. Ground One**

Petitioner claims that jury members were not provided the standard benchbook instruction regarding immunized testimony, and that the "[a]ccomplice [was] granted testimonial immunity, permitted to plead to a single charge of false official statement and confinement capped at 6 months." (Doc. 1, at 6.)

Petitioner asserted on appeal to the AFCCA that "the military judge erred when he modified the standard Benchbook instructions to remove any reference to the significant leniency that SPC CK had obtained in exchange for his testimony." *United States v. Oliver*, 2017 WL 437402, at *11. The AFCCA devoted nearly two pages in its analysis on this issue in the written opinion. *Id*. at *11–12. Noting that neither the accomplice nor immunized testimony instructions are mandatory, the AFCCA pointed out that the military judge nonetheless actually did issue both of those instructions. *Id*. at *11. The judge's instruction informed the panel members that "SPC CK testified under a grant of immunity as part of a pretrial agreement which affected the processing of his court-martial and specifically instructed the members that 'in determining the credibility of this witness [SPC CK], you should consider the fact that this witness testified under a grant of immunity.'" *Id*. The AFCCA also pointed to SPC CK's testimony regarding his immunity, his dropped charges, and the fact that he was already out of

7

jail. *Id.* The AFCCA found that the military judge did not abuse his discretion and that the instructions taken as a whole were legally sufficient. *Id*. at *12.

In support of its conclusion that the trial judge's instructions were correct, the AFCCA cited to *United States v. Carruthers*, 64 M.J. 340 (C.A.A.F. 2007). There, the trial judge issued the standard Benchbook instruction regarding potential accomplices without reference to leniency. The CAAF held that although it would have been better to give the leniency instruction once the issue was raised, "the military judge did not err because the instruction he gave covered its 'critical principles.'" *United States v. Oliver*, 2017 WL 437402, at *12 (citing *Carruthers*, 64 M.J. at 346).

This issue was disposed of after thoughtful analysis by the AFCCA, and was denied by the CAAF. The Court finds that Ground One was fully and fairly considered by the military courts.

**2. Ground Two**

Petitioner alleges that his confession and statements to investigators were not voluntary. (Doc. 1, at 6.) Petitioner cites as supporting facts that "[i]nvestigators instructed that 'there's no way you can incriminate yourself' and '[a]fter you tell us the truth, we're going to call your first shirt and you're going home.'" *Id.* Petitioner has once again raised an argument that has already been fully litigated in the military courts below, at both the court-martial and appellate level.

The military judge's consideration of the voluntariness of Petitioner's confession was addressed in a 23-page ruling denying the defense's motion to suppress Petitioner's confession. (Doc. 7–3.) The judge noted that "[a]t no time during the interview did the accused give any indication that he was ill or tired, and he appeared to be coherent, able to interact, oriented as to time and place, acknowledged questions, and provided contextually appropriate responses." *Id*.

at 5. In that ruling, the judge examined each of the tactics alleged by the defense to have coerced Petitioner's confession. *Id*. at 17–24. For each tactic employed by the interrogating agents, the judge concluded that Petitioner's free will was not overcome. *Id.* As to the instant Petition, both of Petitioner's "supporting facts" for Ground Two were expressly addressed at the court-martial.

Petitioner contends that the interrogating agent's comment that "there's no way you can incriminate yourself" amounted to a grant of de facto immunity. The military judge actually found the agent's comment to be improper, but did not find the comment to have influenced Petitioner's subsequent admissions. The judge notes that shortly after the agent's aforementioned comment, Petitioner asked for a break that lasted about ten (10) minutes. The judge notes that when they re-engaged after the break:

> [T]he accused was informed that the agents did not make decisions about how the accused would be charged or what the maximum punishment might be because the decision on how to proceed would be left to the accused's commander and the legal staff. The accused then conveyed that he was not lying about his prior recall, but that he had time to further reflect on the events and was able to recover additional memories. This discussion reflects that the accused was informed that his commander would decide whether the case would be prosecuted which negated any suggestion that the agent was granting the accused immunity, and the accused's statements in no way suggest that he believed the agent was granting immunity. Under these facts, the Court is persuaded that the accused was not enticed to provide his modified version of events by the misleading statement by the agent or any notion of de facto immunity.

*Id*. at 21.

Petitioner further contends that the interrogating agents' assurance that "[a]fter you tell us the truth, we're going to call your first Shirt[2] and you're going home" also coerced his confession in the sense that the statement implied that admitting to a certain version of events—

---

[2] The term "first shirt" is slang for "First Sergeant." A First Sergeant in the Air Force is typically a Master Sergeant (E-7), who is responsible to a commander (generally the squadron level) for the morale, welfare, and discipline of the enlisted force within that organization.

namely the version presented by the agents—would be necessary to terminate the interrogation. The judge however, found that:

> [T]his was not a promise of leniency but a reflection of the normal processing of an investigation. Contextually, the statements reflect that the accused was going to be released to his unit and the investigation would continue regardless of what he said. The agents then emphasized that the investigation would reveal what actually occurred. Even if this conversation could in some way be considered a guarantee of leniency or forgiveness, the statements was [sic] not conditioned on the accused providing a particular version of events. As such, the Court finds that the accused was not motivated to alter his version of events by this segment of the conversation.

*Id.* at 20.

The AFCCA expressly addressed the "you're not going to incriminate yourself in this" and "after you tell us the truth…we're going to call your first shirt and you are going home" comments from the interrogators. *Unites States v. Oliver*, 2017 WL 437402, at *5. The AFCCA concurred with the trial judge that the agent's statement that Petitioner would not incriminate himself was improper and contrary to Article 31(b) UCMJ, 10 U.S.C. § 831(b), that any statement made by a person accused or suspected of a crime may be used as evidence against him. *Id.* at *5. That being the case, the critical question became whether the agent's statement induced Petitioner to modify his version of events. *Id.* The AFCCA concurred with the trial judge that Petitioner was not unduly influenced by either of the agent's comments, noting that Petitioner requested and received a ten-minute break shortly after the exchange, and that after the break, maximum punishments were discussed along with the fact that Petitioner's chain of command would decide whether to prosecute the case. *Id.* at *5.

The Court finds that the military courts fully and fairly considered the claims raised in Ground Two.

### 3. Ground Three

Petitioner alleges in Ground Three that the "lower court held that defense of accident requested by defense and raised by evidenc[e]," but the "[s]tandard self defense instruction [was] given." (Doc. 1, at 6.) Petitioner alleges that the lower court concluded that the self-defense instruction was tailored to the evidence, yet the instruction on self-defense was taken directly from the benchbook. *Id.*

The trial judge did not find that all the elements of accident had been met, but noted that "even if it was appropriate, it [accident instruction] seemed contained within either the elements of the offense or within the self-defense instruction." *Unites States v. Oliver*, 2017 WL 437402, at *13. Accordingly, the trial judge issued the self-defense instruction. (Doc. 7–4, at 9–11.) The AFCCA specifically addressed the defense of accident instruction *de novo*. *Unites States v. Oliver*, 2017 WL 437402, at *12. The AFCCA did indeed find that the defense had presented enough evidence to trigger the accident instruction, but in the context of self-defense. *Id*. at *14. The AFCCA held that:

> The self-defense instruction given was specifically tailored to the evidence indicating that the death of PO2 DC may have occurred as an unintended result of Appellant's lawful use of force and therefore the essential elements of an accident defense were provided to the fact-finder. In light of the tailored self-defense instruction, we conclude that a separate, stand-alone accident instruction was not required. The instruction provided by the military judge was sufficient. Assuming arguendo that a separate accident instruction was required, we nonetheless find that absence of such an instruction was harmless beyond a reasonable doubt. The self-defense instruction given permitted Appellant to argue that his application of force to PO2 DC was lawful and the resultant death was unintentional and unexpected as a complete defense to the charge and specification of premeditated murder and its lesser included offenses. Appellant was not denied a meaningful opportunity to mount his defense. As such, we are convinced beyond a reasonable doubt that the absence of a separate accident instruction did not contribute to the verdict.

*Id*.

This Court denies relief on Ground Three, because it was fully and fairly considered by the military courts.

**4. Ground Four**

Petitioner's Ground Four is "Fifth Amendment request for counsel." (Doc. 1, at 7.) Petitioner states that "[d]uring interrogation appellant told agents 'I need to like stop and ask for a lawyer.' Agents shook their heads no and replied 'You will be perfectly fine.'" *Id*. The AFCCA noted that "[t]he determination of whether an invocation is unambiguous (requiring the agents to immediately terminate questioning) or ambiguous (permitting further clarifying questions) is an objective inquiry based upon how a 'reasonable police officer' would view the comments." *Id*. at *6. The AFCCA reviewed the following exchange between Petitioner and the special agents:

> [Petitioner]: And just everything is screaming at me that I – I need to like stop and ask for a lawyer.
>
> [Agent DH]: You will be perfectly fine.
>
> [Petitioner]: Or that this is all just me admitting guilt and something.
>
> [Agent DH]: You are only – I'm trying to think how to say this – you are not admitting guilt unless it actually happened.
>
> [Agent JT]: Look, man, you know, there's of course, you know, he explained your rights to you. You know you can ask for a lawyer any time. We can't, you know, we're not lawyers. We can't advise you on that.
>
> [Agent DH]: It's up to you.

*Id*. at *6–7.

The AFCCA found that the evidence established that Petitioner made a knowing and intelligent waiver of his right to counsel and his right to remain silent at the initiation of the interview. *Id*. at *7. When asked if he wanted a lawyer, Petitioner replied "not right now." *Id*. The AFCCA did find the "you will be perfectly fine" comment problematic, but noted that the other agent told Petitioner only moments later that he could ask for a lawyer at any time. Consequently, the AFCCA found Petitioner's comment of "I need to like stop and ask for a lawyer" more accurately characterized as "thinking out loud," as opposed to an unambiguous request for counsel. *Id*. After the above exchange, Petitioner did not make any other references to counsel. Thus, based upon a totality of the circumstances, the AFCCA could not find an unambiguous or unequivocal request for counsel. *Id*. The Court finds that the military courts fully and fairly considered Count Four.

### III. CONCLUSION

Petitioner argues that the military courts did not fully and fairly consider his claims because: 1) his motion for reconsideration was not voted on by the court; 2) trial counsel was permitted to be on the appellee team for the United States during Petitioner's appeal; 3) the government's waiving of its right to file a brief on appeal "infers disregard of appeal"; and 4) the CAAF order denying the petition was not considered "full and fair" treatment where the decision was not "made by any judge by name thereby made by court processes, not careful consideration." (Doc. 11, at 4–10.) The Court finds these arguments unpersuasive, and that Petitioner has failed to meet his burden to show that his military review was "legally inadequate" to resolve his claims. *See Williams*, 671 F. App'x at 721 (citing *Watson*, 782 F.2d at 144 (quotation omitted)).

The military judge and the AFCCA both provided reasoning for their decisions. Although the CAAF's order states that it considered the petition for review and then denied it without discussion, the military court is not required to issue a detailed opinion to conclude that they fully and fairly reviewed a claim, especially where the trial and intermediate appellate court met this requirement. *See Watson*, 782 F.2d at 145 ("When an issue is briefed and argued before a military board of review, we have held that the military tribunal has given the claim fair consideration, even though its opinion summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion.").

Because the military courts fully and fairly reviewed all of Petitioner's claims, the petition for habeas corpus must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that the petition for habeas corpus is **denied.**

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas, on this 25th day of July, 2018.**

s/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**